UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDRE YOUNGBLOOD

                            Plaintiff,

v.                                                      9:10-CV-1255
                                                     (DNH/GHL)

JEFF MCKOY, NURSE REED,

                            Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

ANDRE YOUNGBLOOD, 03-A-1665
Plaintiff *pro se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN                    ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Andre Youngblood claims that Defendant Nurse Mary Reed changed his medication dosage and did not provide adequate treatment for two seizures that he suffered in July 2010. Plaintiff claims that Defendant Jeff McKoy did not adequately respond to his complaints. Currently pending before

the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 25.) For the reasons discussed below, I recommend that Defendants' motion be granted.

## I.    FACTUAL AND PROCEDURAL SUMMARY

Plaintiff arrived at Greene Correctional Facility in June 2010. (Dkt. No. 25-7 ¶ 4.) At that time, Plaintiff was taking Tegretol and Divalproex for seizure disorder. *Id*. The medications were written into Plaintiff's medical chart by a nurse during Plaintiff's first meeting with medical staff at Greene. *Id*. The medications were continued by the orders of Dr. Smith. *Id*. ¶ 5.

Plaintiff alleges that on June 14, 2010, Defendant Nurse Mary Reed changed his medication dosage. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Reed made this change in order to save the state money. *Id*. Plaintiff alleges that his weight dropped from 207 pounds to 179 pounds as a result. *Id*.

Defendant Reed declares that she is not permitted to change or substitute inmates' medication and that she has never done so unless directed to do so by a physician's order. (Dkt. No. 25-7 ¶¶ 7-8.) She declares that during July 2010 she "dispensed only the physician-ordered medication to the plaintiff." *Id*. ¶ 9. She does not explicitly indicate whether or not she "dispensed only the physician-ordered medication to the plaintiff" during June 2010.

Plaintiff's medical records show that he was receiving a 500 milligram dose of his anti-epilepsy medication when he arrived at Greene Correctional Facility. (Dkt. No. 26 at 17.[1]) He received the same dose on June 9, 2010. *Id*. at 16. On June 16, 2010, Plaintiff's valproic acid

---

[1]    Citations to page numbers in Plaintiff's medical records refer to the page numbers assigned by the Court's electronic filing system.

levels were checked. *Id*. at 15.  On June 17, 2010, it was noted that Plaintiff's levels were low, that the doctor was aware, and that there were "no new orders." *Id*.  This note indicated that there had been no changes in medication dosages and that Plaintiff's levels had been normal with the same dosage on March 22, 2010. *Id*.  On June 18, 2010, a hard copy of the test showing Plaintiff's low valproic acid levels was received. *Id*. at 14.  The doctor was informed of the results. *Id*.  Plaintiff's levels were taken again on June 23, 2010. *Id*.  Plaintiff's levels were low again. *Id*. at 8.  On July 8, 2010, a neurology consult was requested. *Id.* at 7.  Plaintiff complained of headaches to non-defendant medical providers on July 9, 2010, and July 18, 2010. *Id.*

Plaintiff alleges that he had two seizures on July 20, 2010.  (Dkt. No. 1 at 4.)  Plaintiff alleges that Defendant Reed ignored the first seizure and left Plaintiff in his cell, stating that Plaintiff looked pale and dehydrated. *Id*.  Defendant Reed confirms that she was called to Plaintiff's cell on July 20, 2010, and observed Plaintiff on the floor of his cell.  (Dkt. No. 25-7 ¶ 10.)  Defendant Reed declares that Plaintiff "became alert and oriented immediately, did not complain of being tired and had no evidence of voiding during the alleged seizure.  The plaintiff's eye fluttered, and he had steady breathing and a regular pulse.  Such reaction is inconsistent with what is medically expected following a seizure." *Id*.  Defendant Reed declares that she noted in Plaintiff's medical chart that he was to see the facility physician as soon as possible. *Id*. ¶ 11.

Plaintiff alleges that when he had the second seizure, Defendant Reed stated that he was faking and did not require treatment.  (Dkt. No. 1 at 4.)  Defendant Reed declares that when she came to Plaintiff's cell the second time, she observed Plaintiff "lying on the floor with regular

3

breathing, no twitching and no evidence of voiding.  These observations are inconsistent with a person having a seizure." (Dkt. No. 25-7 ¶ 12.)  Defendant Reed declares that she took Plaintiff's vital signs, which were within normal range and not consistent with a person having a seizure.  *Id.* ¶ 13.

Defendant Reed declares that based on her education, training and experience as a registered nurse, it was her opinion that Plaintiff "was faking the seizures he allegedly had on July 20, 2010.  However, I did telephone the facility physician, who gave a telephone order to send the plaintiff to the hospital if he claimed to have another seizure." *Id.* ¶ 14.  Defendant Reed declares that at "no time while I observed the plaintiff on July 20, 2010, was the plaintiff in any danger of hurting himself, and the plaintiff did not require any immediate medical care based on his normal vital signs and behavior that was inconsistent with having a seizure." *Id.* ¶ 18.

Defendant Reed declares that when she was dispensing medications at 7:30 p.m. on July 20, 2010, Plaintiff began repeating verbatim things that she had said when Plaintiff was supposedly unresponsive on the floor of his cell.  (Dkt. No. 25-7 ¶ 15.)

Plaintiff does not allege, either in his complaint or in his opposition to the motion for summary judgment, that he suffered any injuries from his alleged seizures on July 20, 2010.  A doctor who examined Plaintiff the next day found him "well and without injury." (Dkt. No. 25-5 at 9.)  At that point, the dosage of Plaintiff's medication was changed.  *Id.*  Defendant Reed began administering the new dosage on July 26, 2010, when it was received in stock from the pharmacy.  *Id.* at 7.

Plaintiff filed the complaint in this action on October 20, 2010.  (Dkt. No. 1.)  Plaintiff alleges that Defendant Reed violated his Eighth Amendment rights by changing his medication

4

on June 14, 2010, and by ignoring his seizures. *Id*. at 4-5. Plaintiff alleges that he "br[ought] the issue to [Defendant] Warden Jeff McKoy" on July 22, 2010, and that Defendant McKoy did nothing. *Id*. Plaintiff alleges that he has a history of seizures that Defendant McKoy did not take seriously. *Id*.[2]

Defendants now move for summary judgment. (Dkt. No. 25.) Plaintiff has opposed the motion. (Dkt. No. 32.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

---

[2]   In addition to the incidents described above, Plaintiff alleges that on June 22, 2010, he went to see Dr. Smith "after the attack reslute (sic) to injuries a strained neck. Come to find out I had a Abscess 3 months from a X-ray on date: 10-6-10." (Dkt. No. 1 at 5.) Plaintiff claims that Defendant Reed is liable for this incident. *Id*. at 6. Plaintiff's complaint does not allege any facts plausibly suggesting that Defendant Reed was involved in this incident.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

      **B.**    **Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means

---

    [3]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III.   ANALYSIS

#### A.   Exhaustion of Administrative Remedies

Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before filing this action. (Dkt. No. 25-9 at 1-3.) Defendants are correct.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007).  In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances.  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010).  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a

written decision within twenty calendar days of receipt of the grievant's appeal. Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* at (d).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

Here, the evidence does not show that Plaintiff filed any grievance regarding the issues raised in this lawsuit. Plaintiff did file a grievance with the IGRC on July 27, 2010, regarding the delay between his increased dosage being ordered and his receipt of the new dosage. (Dkt. No. 25-5.) In that grievance, he complained that Defendant Reed failed to give him his medication on July 26 and July 27, 2010. *Id.* at 13. The IGRC denied the grievance. *Id.* at 16. Plaintiff appealed to Defendant McKoy. *Id.* at 5. Defendant McKoy denied Plaintiff's grievance. *Id.* at 3. Plaintiff testified at his deposition that he then wrote to CORC but got no response. (Dkt. No. 25-3 at 36:23-37:8.) Records from CORC do not show any logged appeals from Plaintiff during the relevant time period. (Dkt. No. 25-4.) If a prisoner appeals to CORC but does not receive a decision, he has failed to exhaust his administrative remedies. *See Mendez v. Artuz*, No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, at * 4, 2002 WL 313796, at * 2 (S.D.N.Y. Feb. 27, 2002).[4]

---

[4] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Thus, even if the July 27, 2010, grievance had involved the matters raised in this lawsuit, Plaintiff failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[5]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Here, as discussed above, remedies were available to Plaintiff.

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Here, Defendants preserved the defense by raising it in their answer. (Dkt. No. 8 ¶ 10.) Moreover, none of the evidence before the Court raises a triable issue that Defendants should be estopped from raising the defense.

Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

---

[5] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004). Here, the evidence does not raise a triable issue that any special circumstances justify Plaintiff's failure to exhaust. Plaintiff's filing of a grievance about other matters within one month of the incidents raised in this lawsuit demonstrates that he was aware of the grievance procedure and how to use it. The evidence shows that Plaintiff, on five other occasions, appealed decisions to CORC, thus demonstrating that he knew how to access that part of the procedure. (Dkt. No. 25-4 at 2.) Plaintiff asserts, without further explanation, that he will "undergo substantial hardship or suffer irreparable injury while exhausting administrative remedies." (Dkt. No. 32 at 2.) This conclusory assertion is insufficient to show that Plaintiff's failure to properly exhaust is justified. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this action because Plaintiff failed to exhaust his administrative remedies.

      **B.**     **Eighth Amendment Claims**

Defendants argue, in the alternative, that they are entitled to summary judgment because Plaintiff has not raised a triable issue of material fact showing that Defendants were deliberately indifferent to his serious medical needs. (Dkt. No. 25-9 at 4-9.) Defendants are correct.

         1.     <u>Defendant Reed</u>

Plaintiff claims that Defendant Reed violated his Eighth Amendment rights. (Dkt. No. 1 at 6.) Defendants argue that Plaintiff has not raised a triable issue that he suffered from a serious medical need or that Defendant Reed acted with deliberate indifference. (Dkt. No. 25-9 at 8-9.) Defendants are correct.

11

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle*, 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is

sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

The issue of whether Plaintiff has raised a triable issue of fact regarding the severity of his medical condition is a close one.[6]  I note that in a previous lawsuit filed by Plaintiff regarding his seizure disorder, this Court found that (1) Plaintiff failed to show that he suffered from a serious medical condition when he alleged that medical staff at Clinton Correctional Facility failed, on one occasion, to give Plaintiff his morning dose of seizure medication; but that (2) Plaintiff showed that he suffered from a serious medical condition where he alleged that he suffered a seizure after Clinton Correctional Facility staff ignored his request for an emergency sick call.  *Youngblood v. Artus*, No. 9:10-CV-0752 (MAD/DRH), 2011 U.S. Dist. LEXIS 145470, at *16-22, 2011 WL 6337774, at *7-8 (N.D.N.Y. Dec. 19, 2011).  The Second Circuit has suggested that seizure disorders, such as epilepsy, constitute "serious medical conditions" for Eighth Amendment purposes.  *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002).  Therefore, I will assume for the purposes of this motion that Plaintiff has raised a triable issue of fact that he suffers from a serious medical condition.

Plaintiff has not, however, raised a triable issue of fact that Defendant Reed was deliberately indifferent to his serious medical condition.  Medical mistreatment rises to the level

---

[6]  The one case cited by Defendants for the proposition that Plaintiff did not suffer from a serious medical condition involved an inmate with a back condition who refused to cooperate with his medical care.  *Benitez v. Pecenco*, No. 92 Civ. 7670, 1995 U.S. Dist. LEXIS 10431, 1995 WL 444352 (S.D.N.Y. Jul. 27, 1995).   That case is irrelevant to the facts at issue here.

of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997).  A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

     Here, Plaintiff alleges that Defendant Reed changed his medication and ignored his seizures.  There is no evidence in the record raising a triable issue of fact that Defendant Reed changed Plaintiff's medication in June 2010.  The evidence, to the contrary, indicates that Plaintiff's dosage remained the same.  As to the two seizures that Plaintiff allegedly suffered on July 20, 2010, the record does not indicate that Defendant Reed acted with deliberate indifference.  Instead, the record indicates that she responded to reports of the seizures, examined Plaintiff, and determined that he did not need further medical assistance.  (Dkt. No. 25-7 ¶¶ 10-

13.)  Despite her opinion that Plaintiff did not require assistance, she called the facility's physician and obtained advice regarding the situation.  *Id*. ¶ 14.  Even if Defendant Reed's opinion was incorrect (which is not indicated by anything in the record), her actions would demonstrate merely malpractice, not deliberate indifference.  Therefore, I recommend that the Court grant the motion for summary judgment dismissing the Eighth Amendment claims against Defendant Reed.

> 2. <u>Defendant McKoy</u>

Plaintiff claims that Defendant McKoy was deliberately indifferent to his serious medical needs.  (Dkt. No. 1 at 6.)  Defendants argue that Defendant McKoy was not personally involved in any constitutional violation and that, even if he was, he was not deliberately indifferent to Plaintiff's serious medical needs.  (Dkt. No. 25-9 at 5-7.)  Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held

a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[7]

Here, as discussed above, Plaintiff has not raised a triable issue of material fact that there was a constitutional violation. Therefore, Defendant McKoy cannot be held liable. Even if Plaintiff had raised a triable issue regarding his Eighth Amendment claims against Defendant Reed, Defendant McKoy would not be liable because he was not personally involved. Although, as discussed above, Plaintiff wrote to Defendant McKoy about a different incident involving Defendant Reed, there is no indication that Defendant McKoy was aware of the earlier dosage allegation or of Plaintiff's seizures. Further, Defendant McKoy cannot be held liable under the fourth *Colon* category because he does not directly manage medical staff. Defendant McKoy declares that he "did not make decisions relating to inmates' health care and deferred to the facility's medical staff . . . ." (Dkt. No. 25-6 ¶ 5.) Therefore, I recommend that the Court grant

---

[7] In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

Defendants' motion for summary judgment and dismiss Plaintiff's Eighth Amendment claim against Defendant McKoy.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Mendez v. Artuz*, No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, 2002 WL 313796 (S.D.N.Y. Feb. 27, 2002) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: February 6, 2012
       Syracuse, New York

George H. Lowe
United States Magistrate Judge